**SIGNED THIS: January 22, 2007**

                                         **THOMAS L. PERKINS**
                          **UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TIMOTHY JAMES DALEY, | ) | No. 05-87138 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| AUDI MILLER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 06-8071 |
| | ) | |
| TIMOTHY JAMES DALEY, | ) | |
| Defendant. | ) | |

**O P I N I O N**

This adversary proceeding is before the Court after trial on the Complaint filed by Audi Miller, the Plaintiff (PLAINTIFF), against Timothy James Daley, the Debtor (DEBTOR), seeking a determination that the debt owed him by the DEBTOR is nondischargeable under Section 523(a)(2)(A) of the Bankruptcy Code.

This dispute centers around a residential lease with a purchase option executed by the DEBTOR on property owned by his former spouse, Lori Daley.    The DEBTOR lived

behind the PLAINTIFF'S girlfriend. One day in the fall of 2002, when the DEBTOR was out in his yard, the PLAINTIFF'S girlfriend approached him and inquired if he could get a house for the PLAINTIFF. Soon thereafter, the PLAINTIFF'S girlfriend introduced the PLAINTIFF to the DEBTOR. The DEBTOR showed the PLAINTIFF a home at 124 16th Avenue in East Moline and the PLAINTIFF agreed to lease the property with an option to purchase. Lori owned the property. The DEBTOR prepared a lease with an option to purchase which provided for rental payments of $1,000 per month for six months and a purchase price of $85,000. The lease identified the DEBTOR as Lessor and made no mention of Lori. At the end of the initial term, if the PLAINTIFF presented evidence that he had not been approved for a mortgage, the lease would be extended an additional six months. The agreement, dated September 18, 2002, called for the payment of a "Security/Option Consideration," as follows:

> The security deposit of $ __ 3500.00__ shall secure the performance of the Lessee's obligations hereunder. Lessor may, but shall not be obligated to, apply all or portions of said deposit on account of Lessee's obligations hereunder. Any balance remaining upon termination shall be returned to Lessee.

The agreement provided that in the event the option to purchase was exercised, 50% of the rent paid and the security deposit would be credited to the purchase price.[1]

The DEBTOR signed the document representing that he was the owner of the property. Paragraph 28 of the Lease states that "Lessor warrants to Lessee that Lessor is the legal owner of the leased premises and has the legal right to sell leased premises under the terms and conditions of this agreement." The PLAINTIFF made the down payment of $3,500 and moved into the property in September, 2002, and resided there with his

---

[1] The PLAINTIFF mistakenly testified that this was the parties' understanding even though it was not reflected in the agreement.

2

girlfriend and his four-year-old daughter. He paid the DEBTOR the $1,000 per month rent for the first three months. Sometime thereafter, he learned that the DEBTOR did not own the property so he stopped paying the rent. Thereafter, Lori served the PLAINTIFF with an eviction notice and he moved out.

During that same time period, the PLAINTIFF sued the DEBTOR in state court, ultimately obtaining a judgment.[2] According to the PLAINTIFF, the DEBTOR paid the judgment down to $1,974. No evidence was introduced as to whether the judgment was by default, by consent, or after trial. The PLAINTIFF makes no claim that the judgment has collateral estoppel effect in this adversary proceeding.

The DEBTOR filed a Chapter 7 petition on October 15, 2005. The DEBTOR listed the PLAINTIFF as having an unsecured claim in the amount of $2,000. The PLAINTIFF filed this Adversary Complaint to have the debt declared nondischargeable pursuant to Section 523(a)(2)(A), alleging that through false pretenses, false representations or actual fraud, the DEBTOR obtained funds from him for the purchase of a home which the DEBTOR did not own. A trial was held on October 5, 2006. Both the PLAINTIFF and the DEBTOR testified.

The PLAINTIFF testified that during the three months he lived in the property he attempted to obtain financing which did not require a down payment, but was not successful. He testified that he moved out because "there was no way that he was going to be able to purchase the place" and because he had received an eviction notice. He admitted that he never sought a deed to the property.

---

[2] Neither the pleadings, the judgment order, nor other documents from the state court suit were offered into evidence.

3

The DEBTOR testified that even though he and his former spouse were getting divorced, he handled her real estate transactions.[3] He testified that Lori had authorized him to sell her house to the PLAINTIFF. He testified that the $3,500 received from the PLAINTIFF was split between he and Lori, but he could not recall how much they each received. According to the DEBTOR'S testimony, the PLAINTIFF told him that he had lost his job and that the PLAINTIFF was served with an eviction notice because he failed to pay the rent. He testified that Lori would have conveyed the property to the PLAINTIFF if he would have obtained the financing to purchase it. He admitted that he had previously entered into a similar transaction on the same property with a different lessee and had been sued.

The matter was taken under advisement. The Court, having considered the evidence presented and the credibility, candor and demeanor of the witnesses, finds that the PLAINTIFF has failed to prove that his claim should be excepted from discharge.

**ANALYSIS**

A creditor seeking to establish an exception to the discharge of a debt bears the burden of proof. *Matter of Scarlata*, 979 F.2d 521 (7th Cir. 1992). A creditor must meet this burden by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In order to effectuate the debtor's fresh start, exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. *Meyer v. Rigdon*, 36 F.3d 1375 (7th Cir. 1994).

---

[3]The DEBTOR could not recall whether he and Lori were still married at the time this agreement was entered into. He testified that as a result of a brain aneurism and encephalitis, his memory is impaired.

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge a debt for obtaining money or property by false pretenses, a false representation or actual fraud. 11 U.S.C. § 523(a)(2)(A). Where, as here, a false representation is alleged, the analysis contains the following elements: (1) the debtor made a representation to the creditor; (2) the debtor's representation was false; (3) the debtor possessed *scienter*, i.e., an intent to deceive; (4) the creditor relied on the debtor's misrepresentation, resulting in a loss to the creditor; and (5) the creditor's reliance was justifiable. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). Ordinarily, a fraudulent misrepresentation must relate to a past or existing fact, and may not be based upon a failure to perform a promise or agreement to do something at some future time. Only where the debtor never intended to perform at the time he made the promise will the misstatement of intention constitute a fraudulent misrepresentation. *In re Alicea*, 230 B.R. 492 (Bankr.S.D.N.Y. 1999).

The essence of the PLAINTIFF'S case is that the DEBTOR masqueraded as owner and agreed to sell property that he did not own. The DEBTOR admits that he did not own the property at the time the lease was entered into. The DEBTOR, however, contends that although he did not own the property, he entered into the lease at his former spouse's request and with her approval. According to the DEBTOR, he did not intend to deceive the PLAINTIFF.

The DEBTOR'S version of events is plausible and not contradicted by any evidence. Lori did not testify. Although the DEBTOR'S testimony was weakened by the alleged memory lapses, the Court is not prepared to jettison his story as a complete fabrication without some contradictory evidence. If the DEBTOR was lying, why didn't the

PLAINTIFF call Lori as a witness to impeach him? No explanation was offered for her failure to testify. The PLAINTIFF offered no direct or circumstantial evidence that Lori did not authorize the DEBTOR to lease and sell the property on her behalf. On the basis of the evidentiary record, the Court finds that the DEBTOR acted with Lori's knowledge and consent in leasing and agreeing to sell the property to the PLAINTIFF, and that he did not act with the requisite *scienter* to support a claim under Section 523(a)(2)(A).

In addition, the PLAINTIFF failed to prove that his reliance on the DEBTOR'S misrepresentation caused a loss. The evidence does not support a finding that the PLAINTIFF would not have obtained title from Lori if he had been able to obtain financing. It is admitted by the PLAINTIFF that he was unable to obtain a mortgage loan to buy the property, which he then abandoned when it became apparent that financing was not available to him.

Moreover, the PLAINTIFF received everything he bargained for. He occupied the property for at least as long a term, probably longer, for which he paid rent. There is no provision in the lease for return of any portion of the rent payments if the purchase option is not exercised. To the extent he was entitled to a return of all or a portion of the security deposit, he obtained a judgment against the DEBTOR for an equivalent amount, which was partially paid prepetition.

The PLAINTIFF having failed to prove his claim, judgment will be entered in favor of the DEBTOR. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###